Day, C. J.
It is conceded that, if the title of the intestates, Austin and Robert Allen, to the estate in dispute, came to them by descent, the estate passed, under the statute “ regulating descents,” to the brothers and sisters of the intestates, whether they were of the whole or half-blood; but if the estate did not come to the in-testates by descent, it passed to the brother and sister of the whole blood only.
This being the state of the case, the question submitted for our consideration is, whether the title of Austin and Robert Allen came to them by descent. It is important, therefore, to clearly understand the meaning of the term “ descent;” for it is, undoubtedly, used in the statute as having a fixed legal signification, when used in relation to the transmission of title to real estate.
The term is defined by Blackstone (2 Com. 201) as follows:
“ The methods, therefore, of acquiring on the one hand, and of losing on the other, a title to estates in things real, are reduced by our law to two : descent, where the title is vested in a man by the single operation of law; and purchase, where the title is vested in him by his own act or agreement.
*“ Descent or hereditary succession, is the title whereby a man, on the death of his ancestor, acquires his estate by right of representation, as his heir at law. An heir, therefore, is he upon whom the law casts the estate immediately on the death of the ancestor; and an estate so descending to the heir, is in law called the inheritance.”
*488 To the same effect is the definition of Chancellor Rent (4 Com. *373):
“All the modes of acquiring., title to land are reducible to title by descent and by purchase; or, according to the better distribution of Mr. Hargrave, into title by act or operation of law, and title by purchase, or by the act or the agreement -of the parties.” . . . “Descent or hereditary possession, is the title whereby a person, on the death of his ancestor, acquires his estate by right of representation as his heir.”
It would seem, then, if the title of these intestates vested in them “by the single operation of law,” that, on the death of their ancestor, the estate came to them by descent. The ancestor left nine children; it is, therefore, clear that one-ninth of the estate was cast by the statute upon each of the children. So much then, undoubtedly, came to them by descent. Each, moreover, had a right to have his ninth located in a distinct part of the premises, by proceedings in partition (Tabler v. Wiseman, 2 Ohio St. 211); or the same thing might be effected by mutual releases (Crosthwaite v. Dixon, 5 Adol. & Ellis, 834). No new title would be acquired in either case, and the estate of each in the land would remain the same as before. The tenancy in common only would be dissolved, and the estate of each thereby become separate.
It is claimed that the proceedings instituted in 1847 resulted only in a partition. This could hardly be claimed but for the singular coincidence in the appraisal of the two parcels of land, making one equal in value to five-ninths, and the other to four-ninths of the whole. But this circumstance, whether accidental or otherwise, can not make the case differ in principle from what it would have been if the land in controversy in this case had been the only piece, and had been in like manner taken at the appraised value.
The interest of these intestates in the premises, beyond the Respective one-ninth of each, was not acquired by partition, but by their own action, whereby they jointly assumed a pecuniary obligation equal to the whole value of the land above the two-ninths that the law cast upon them at the decease of the common ancestor.
In addition to providing for the partition of an estate among tenants in common, the statute provides that when it can not be done without injury to the value thereof, the real estate may be transmuted into money, or divisible securities for money. The trans *489 mutation may be accomplished in two ways: one in part, by onqtenant in common paying to the others their respective shares; and the other, by the sale of the whole estate and dividing the money in lieu of the land.
Under the partition proceedings of 1847, the intestates, with their brother Henry and sister Mary, elected to take the premises in dispute, as provided in the 8th section of the “ act to provide for the partition of real estate,” which is as follows:
“ That when any writ of partition shall issue as aforesaid, if the freeholders who are directed to make such partition shall be of •opinion that the estate or estates can not be divided according to the demand of the writ, without a manifest injury of the value thereof, the said freeholders shall then make and return to the ■court a just valuation of such estate or estates; whereupon, if said court shall approve of said return, and if any one or more of the parties shall elect to take the said estate or estates at such appraised value, the same shall be adjudged to him, her, or them — he, she, or they paying to the other party or parties his, her, or their proportion of the appraised value thereof, according to his, her, or their respective rights; and on payment being made, the sheriff shall, according to the order of the court aforesaid, make and execute conveyances to the party or parties electing to take the same.”
Under this section, the party electing to take the land can obtain title to it only by paying therefor the full value above his own share. Here, then, it is manifest that the title is procured by the “act of the party,” and that it is not cast upon him by “operation ■of law.” This is the manner in *which title is acquired under this statute; and, to the extent that it is so acquired, it falls more clearly within the definition of title by purchase than that of title by descent.
It is true that no money was in fact paid in this case; but the legal obligation to do so was none the less, because the same end was accomplished in another form. The duty of payment was as much fixed as it would have been if the piece elected to be taken had been all the estate, or if the other party had not taken the other piece. In contemplation of the law the payment must be made before the conveyance is executed. The mutual set-off made in this case, was a matter of convenience between the parties, and, in effect, was payment. If the election of pieces had been reversed by the parties, the same settlement could have been made, *490 only there would, in that case, have been a balance due from one set of parties to the other, to be paid in money.
However the parties may, as between themselves, make the requisite payments, it is clear that the title obtained under the 8th section of the act is not a title by descent.
It is claimed, on the other hand, that the entire title of the parties, electing to take the land under the statute, is a title by purchase, the same as if the land had been sold under the provisions ■of the 9th and 10th sections. How this might be if the land had been sold, it is not now necessary to determine,
A plain distinction is made between the two cases in the amount of money to be paid. In case of a sale — which may be to any one —full payment is required; but in casé of an election — which can be made by parties only — payment of the amount due to the other parties is all that is required.
The theory of the statute would seem to be, that upon a sale the entire title may pass to the purchaser; but that on an election by a party, only so much passes as is not already vested in him ; or, in other words, that the election operates, in consideration of money paid, to extinguish the title of all the parties except that of the party taking it. The party, who elects to take the land, is thus left with a title cast upon him by law to the extent of his inheritance, and with the residue of the title to the full estate perfected by his own %ct. It follows that his title comes in part by descent and in part by purchase.
We think, then, that so much of the title of the parties who elected to- take the land, as came to them by descent, remained in them unchanged by the proceedings under the statute; and that what they acquired by such proceedings was a title by purchase.
The ancestor died leaving nine children, who inherited the estate in controversy; four of them took it under the provisions of the 8th section, so that, on the principles stated, they took four-ninths of the land by descent, and five-ninths by purchase. One-half, or nine-eighteenths of this estate, belonged to the two intestates; four-eighteenths of which, having come to them by descent, descended to their brothers and sisters of the whole or half-blood; and five-eighteenths, having come to them by purchase, descended to their brother and sister of the whole blood only.
This determines the questions reserved for decision here, and a .decree will be entered -in accordance therewith.'
*491 White, Welch, and Scott, JJ., concurred.